UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FRANKLIN PUBLICATIONS, INC.,

              Plaintiff,                    Case No. 2:05-cv-1061
                                                    JUDGE GREGORY L. FROST
      v.                                Magistrate Judge Norah McCann King

GENERAL NUTRITION CORP.,

              Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) a motion for partial summary judgment (Doc. # 22) filed by Defendant, General Nutrition Corporation, a memorandum in opposition (Doc. # 45) filed by Plaintiff, Franklin Publications, Inc., and a reply memorandum (Doc. # 51) filed by General Nutrition Corporation; and

(2) a motion for partial summary judgment (Doc. # 31) filed by Plaintiff, Franklin Publications, Inc., a memorandum in opposition (Doc. # 46) filed by Defendant General Nutrition Corporation, and a reply memorandum (Doc. # 52) filed by Franklin Publications, Inc.

For the reasons that follow, the Court **DENIES** General Nutrition Corporation's motion for partial summary judgment (Doc. # 22) and **GRANTS** Franklin Publications, Inc.'s motion for partial summary judgment (Doc. # 31).

### I.  Background

Plaintiff, Franklin Publications, Inc. ("Franklin"), is an Ohio corporation that publishes

two magazines, *Let's Live* and *Physical*.  Defendant, General Nutrition Corporation ("GNC"), is a Pennsylvania corporation that is in the business of selling health and nutrition products through both retail stores and its website.

The parties have had contractual relations since the 1990s.  Of import here is that in 2001, Franklin and GNC entered into two agreements.  Under the agreements, Franklin was to publish and distribute to members of GNC's "Gold Card" discount program a minimum of 400,000 copies per month of *Physical* and 1,000,000 copies per month of *Let's Live*.  The agreements extended through December 31, 2006, but the parties renegotiated various agreement terms in June 2004.  The renegotiated terms shifted some of the production and mailing costs of the magazines, altered the number of per-month copies involved, and extended the agreements' duration until December 31, 2009.  Both Scott Johnson, Franklin's CEO, and Louis Mancini, GNC's CEO, signed the amendments.

Part of the parties' arrangement involved GNC supplying Franklin with the names and mailing addresses of GNC Gold Card members.  Franklin would then send these members copies of the magazines, which generally contained articles on and advertisements for products sold in GNC stores.  Franklin sold much of this advertising to companies that produced the advertised products sold by GNC, and GNC in turn encouraged its vendors to advertise in the two magazines.  GNC also utilized free advertising space that it received in the magazines and had the right to purchase additional advertising at reduced rates.

In July 2005, GNC notified Franklin that GNC's CEO had lacked the authority to execute the 2004 amendments to the agreements.  Thus, GNC asserted, the amendments were void and GNC's agreements with Franklin would end on the original termination date of December 31,

2006 and not on the 2009 previously agreed-upon termination date.  GNC subsequently sent Franklin an October 25, 2005 letter stating that it was terminating the contracts effective December 31, 2005.  Franklin asserts that GNC also pressured vendors to cease advertising in the Franklin publications.

Franklin subsequently filed suit in the Common Pleas Court in Franklin County, Ohio on October 26, 2005.  (Doc. # 1, Ex. A, Compl.)  GNC removed the case to this federal forum on November 23, 2005.  (Doc. # 1.)  In a nine-count amended complaint, Franklin asserts various claims for declaratory judgment, breach of contract, tortious interference with business relations, unjust enrichment, promissory estoppel, and specific performance.  (Doc. # 44 ¶¶ 23-65.)

GNC has moved for partial summary judgment on the grounds that Franklin cannot recover consequential damages, including lost profits from advertisers.  (Doc. # 22.)  Franklin has also moved for partial summary judgment on the issue of damages, seeking a judgment as to the proper measure for calculating the damages Franklin may collect from GNC for breach of contract.  (Doc. # 31.)  The parties have completed briefing on the motions, and both motions are now ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to

establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

GNC moves for partial summary judgment on the grounds that because the contracts at issue involve the sale of goods, the state version of the Uniform Commercial Code precludes Franklin as the seller from recovering consequential damages including lost profits from third-party advertisers. Alternatively, GNC asks that if the Court does not grant this requested partial judgment, the Court nonetheless set forth the facts that are without substantial controversy, including the extent and type of damages that would not be in controversy.

Franklin in turn moves for partial summary judgment on the grounds that the agreements

at issue are for the provision of services and not for the provision of goods.[1]  Therefore, Franklin

reasons, Ohio's version of the Uniform Commercial Code does not apply.  Even if that statutory

scheme does apply, however, Franklin asserts that it does not foreclose the recovery of lost

profits.

In a diversity case such as the instant case, the Court must apply the choice-of-law

provisions of the forum state to determine which state's law applies.  *Bank of New York v.

Janowick*, 470 F.3d 264, 270 n.3 (6th Cir. 2006); *Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x

503, 505 (6th Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)).

Once a court has determined which state's law applies, that court must proceed to discern the

applicable substantive law of that state.  The Sixth Circuit has explained the consequent inquiry:

> Sitting in diversity, our duty is to apply the law of the forum state as
> announced by its highest court.  *West Bay Exploration Co. v. AIG Specialty
> Agencies of Tex., Inc.,* 915 F.2d 1030, 1034 (6th Cir. 1990).  Where the relevant
> state supreme court has not spoken on an issue, we apply the rule that we believe
> the state supreme court would apply if it were to decide the case.  *Himmel v. Ford
> Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003).

*Bank of New York*, 470 F.3d at 272.

Turning to the choice of law provisions of Ohio, the forum state here, leads this Court to

apply Ohio substantive law.  The Supreme Court of Ohio has held that an actual conflict between

Ohio law and the law of another jurisdiction must exist before a court should undertake a choice-

of-law analysis.  *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 474-75, 861

N.E.2d 109, 115 (2006).  Therefore, if two states use the same substantive rules of law or

---

[1]  Franklin requests in its summary judgment motion that the Court hold oral argument.
Given the issues involved, the Court concludes that oral argument is neither helpful nor essential
to the fair resolution of the motions.  *See* S.D. Ohio Civ. R. 7.1(b)(2).  Accordingly, the Court
**DENIES** the request.

resolution of the substantive issues would produce the same result under either state's law, Ohio law governs. *Mecanique C.N.C., Inc. v. Durr Envtl., Inc.*, 304 F. Supp. 2d 971, 975-76 (S.D. Ohio 2004) (applying Ohio choice of law rules).

GNC asserts that there is no apparent conflict among the state law potentially applicable here–the retailer suggests that Ohio, Pennsylvania, and California are all possibly implicated in this litigation–because all of the states have adopted the same provisions of the Uniform Commercial Code upon which GNC relies. Moreover, Franklin also relies upon the substantive law of Ohio. No party apparently seeks to apply another state's law other than as persuasive authority, and no party has demonstrated how any state conflicts with Ohio. Thus, this Court can now turn to Ohio Revised Code Chapter 1302.

Ohio Revised Code Chapter 1302, which represents the statutory codification of Uniform Commercial Code Article Two, applies to the sale of goods. Ohio Rev. Code § 1302.02. The definitions provision of that chapter provides in relevant part that " '[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." Ohio Rev. Code § 1302.01(A)(8). GNC argues that because the two magazine contracts are for the sale of goods under this definition, the statutory scheme applies and ultimately precludes the consequential damages Franklin seeks.

It is possible to resolve the parties' dispute by summary judgment. Ohio law provides that "[w]here . . . there are no disputed facts that raise issues to be decided by the jury, it is proper for the trial court to rule as a matter of law on whether the contract is covered by Article Two." *Arlington Elec. Const. v. Schindler Elevator Corp.*, No. L-91-102, 1992 WL 43112, at *4

6

(Ohio App. 6th  Dist. Mar. 6, 1992).

Ohio law also teaches that to determine whether the magazine deals at issue here involve "goods" within the statutory meaning requires the Court to apply the "predominant purpose" test. This test asks " 'whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved.' " *Carcorp, Inc. v. Chesrown Oldsmobile--GMC Truck, Inc.*, 159 Ohio App. 3d 87, 95, 823 N.E.2d 34, 41 (Ohio App. 10th Dist. 2004) (quoting *Allied Indus. Srv. Corp. v. Kasle Iron & Metals*, 62 Ohio App. 2d 144, 147, 405 N.E.2d 307, 310 (Ohio App. 6th Dist. 1977)).  GNC's theory of the case is that although labor was involved in the production of the magazines, the predominant purpose of the contracts were to acquire goods rather than services.  Franklin disagrees, of course, and argues that the purpose of the contracts were to acquire services.

GNC cites to a number of non-Ohio cases in which contracts for the printing of magazines were held to be for the sale of goods, with the printing of the magazines considered an incidental requisite service.  But as Franklin notes, other outside-Ohio case law recognizes that when special skill or expertise is required, the contracts are for services.  *See, e.g., Gross Valentino Printing Co. v. Clarke*, 120 Ill. App. 3d 907, 910-11, 458 N.E.2d 1027, 1030 (Ill. App. 1st Dist. 1983) (drawing a distinction between contracts for printing and contracts for printing involving more independent judgment, skill, and service).

The contracts at issue here–and they are at best *mixed* contracts for services *and* goods, despite Franklin's position–involved magazines that could be considered goods and involved specialized labor and expertise related to those products that remove the agreements from just

7

being contracts for the sale of goods.[2]  The magazines had to fall within a specific scope of

editorial content and implicit and express advertising, targeting GNC customers with material

focused on products sold at GNC.  The contracts are therefore not simple arrangements for goods

but mixed agreements for goods of a specific content *and* for services requiring expertise.  The

execution of these agreements required Franklin to generate editorial content, to create the

design and layout of the magazines, to provide and obtain related advertising, to manage the

printing of the magazines, and to distribute the magazines.  There is no evidence before the

Court that all of these services are fungible so as to defeat an argument that the contracts target

Franklin's expertise.  In fact, the 2004 amendments specifically guaranteed the personal services

of Franklin CEO Scott Johnson and provided an early termination provision in favor of GNC if

Johnson's involvement ended.  GNC attempts to characterize this as simply a quality control

measure, but the retailer's contention underscores Johnson's involvement and expertise in

managing the magazine production as ensuring quality.  In other words, GNC was not just

buying magazines produced by fungible management.  Rather, the company was contracting for

what it describes as "magazine[s] that discussed and promoted its products"(Doc. # 46, at 6)–and

this promotion was to be done in a specific way, guided by specific expertise applied to a variety

of services.  Johnson and his company are thus indeed akin to a photographer here insofar as this

was an inherently expertise-laden endeavor requiring a specified perspective and promotional

---

[2]  GNC's reliance on *International Periodicals Distributors v. Bizmart, Inc.*, 95 Ohio St.
3d 452, 768 N.E.2d 1167 (2002), is therefore misplaced.  That case involved only the sale and
delivery of magazines and not the more nuanced custom arrangement *sub judice*.  Here,
distribution was but one part of the parties' agreements, which also covered highly specific
details such as advertising content, content focus, and other such distinguishing factors.  *Bizmart*
does not reflect such similar characteristics.

staging.

The Court notes Franklin's argument that the fact that the agreements called for the creation and maintenance of a website for GNC informs whether the contracts were for service or goods, despite the fact that the agreement amendments negotiated in 2004 eliminated the website. This provides limited support for Franklin's position in that it perhaps targets one aspect of the pre-amendment contract purpose while essentially remaining silent on the post-amendment contract purpose.

Of greater weight is the fact that the contracts covered advertising. As Franklin correctly asserts, the contracts provided GNC with "free" advertising space in the magazines and gave the retailer the right to purchase additional advertising at reduced rates. A contract for advertising is a contract for a service, not for the sale of goods. *Directory Publishers Inc. v. Lake Country Hearth & Leisure*, 193 Misc. 2d 799, 801-02, 753 N.Y.S. 2d 660, 663 (N.Y. City Ct. 2002) (holding that a contract for advertising in a magazine was for services and not for goods under U.C.C. 2-105). This advertising component is important because, as the undisputed evidence demonstrates, the purpose of the agreements to GNC were to target the retailer's dedicated customers with information and advertisements intended to induce product purchases. GNC even contracted for delivery of the magazines to its Gold Card members to coordinate with timed sales and required advertisers to include the GNC logo in their advertisements.

In short, GNC's participation in the agreements with Franklin was to have two big advertisements created and delivered monthly to targeted customers on a set timetable. The paid advertisement and features fulfilled this function, given that even editorial content such as articles on products *inherently* function as advertising for that product and by extension for

9

GNC, the store behind the promotional push.  Thus, as Franklin correctly asserts, the agreements were for "marketing and creative publishing *services*."  (Doc. # 31-2, at 2.)  The direct-marketing magazines were incidental means of delivering that advertising service.[3]

The fact that the magazines involved had existed well before the Franklin-GNC contracts does not prove dispositive here.  A prior purpose or focus does not control these parties' contractual arrangement and the focus and nature of the magazines as they existed during the relevant time periods involved here.  What matters is what the parties contracted for here, and GNC ultimately contracted for advertising and marketing services using the publications as delivery vehicles.  Even if Franklin applied sub-contractors to implement some of its services, Franklin was still responsible for the overall management and delivery of those services.

Therefore, applying the predominant purpose test, this Court concludes that as a matter of law, the skill, judgment, and expertise required of Franklin in the contracts, as well as the contracts' provisions for advertising and delivery services, renders the agreements predominantly for services and not predominantly for the sale of goods.  This means that the U.C.C. Article Two provisions of Ohio Revised Code Chapter 1302 do not apply and that the conventional breach of contract remedies and available damages apply.  Having reached these conclusions, the Court need not and does not opine on the parties' remaining moot arguments concerning the scope of damages recoverable if Ohio Revised Code Chapter 1302 did apply.

Additionally, in accordance with GNC's request, the Court makes the following findings under Federal Rule of Civil Procedure 56(d): (1) those facts involved in the disposition of these

---

[3]  The fact that the contracts set a per-copy billing arrangement does not transform the predominant purpose of the service contracts into contracts for the sale of goods.  Rather, it is but one factor that the Court must consider in looking at the entirety of the contracts.

motions as described in Section I, above, appear to be without substantial controversy and are

deemed established, and (2) the amount of damages remains in controversy.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** GNC's motion for partial summary

judgment (Doc. # 22) and **GRANTS** Franklin's motion for partial summary judgment (Doc. #

31).

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
