**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**FRANKLIN PRODUCTIONS, INC.,**

      **Plaintiff,**　　　　　　　　　　　Case No. 2:05-cv-1061
　　　　　　　　　　　　　　　　　　　　　　　**JUDGE GREGORY L. FROST**
   **v.**　　　　　　　　　　　　　　　　　　Magistrate Judge Norah M. King

**GENERAL NUTRITION CORP.,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court for consideration of a Motion to Dismiss (Doc. # 62) filed by Third Party Defendant Louis Mancini ("Mancini"), a Memorandum in Opposition (Doc. # 94) filed by General Nutrition Corporation ("GNC"), and a Reply.  (Doc. # 95)   For the reasons that follow, the Court grants Mancini's motion.   (Doc. # 62.)

### A.  Background

Mancini resides in New Hampshire and is currently employed in that state.  He has never lived in Ohio or been employed in Ohio.  He also has never owned any real or personal property located in Ohio.  Mancini became employed as President and Chief Executive Officer of General Nutrition Centers, Inc. ("General Nutrition Centers") pursuant to an employment agreement dated December 5, 2003.  General Nutrition Centers is a holding company with no direct operations.  It is a Delaware corporation but is headquartered in Pittsburgh, Pennsylvania.  GNC is a wholly owned subsidiary of General Nutrition Centers.  GNC is a Pennsylvania corporation with its headquarters and principal place of business in Pittsburgh, Pennsylvania.  Plaintiff Franklin Publications, Inc. ("Franklin") is an Ohio Corporation.  GNC and Franklin had

magazine publishing agreements under which Franklin would publish GNC's monthly *Let's Live* and *Physical* magazines.  GNC and Franklin extended these agreements several times between 1997 and 2003.  The final extensions agreements were scheduled to expire in December 2006.

As CEO of GNC, Mancini was required to comply with GNC's Code of Ethical Business Conduct.  GNC requested that Mancini disclose to GNC any business dealings or transactions between himself or family members with persons or entities conducting business with GNC or relationships that were or could be perceived to constitute a conflict of interest.  Notwithstanding his ethical duties, GNC alleges that Mancini never disclosed to GNC the fact that his wife benefitted from GNC agreements with Franklin.  Namely, she received payments from Franklin based on the continued revenue that GNC generated from the agreement.

In 2004, GNC created a Contract Review Committee ("Committee") and gave it the sole authority to approve and enter into contracts on behalf of GNC.  Mancini was a member of the Committee.  In taking this action, GNC expressly intended to limit the authority of its employees and officers to enter agreements on GNC's behalf.   During this same time frame, the board of directors of General Nutrition Centers–which also included Mancini–was actively investigating alternative media sources to market its products.  This transition to alternative advertising sources would mean the potential limitation or discontinuation of the publication of the *Let's Live* and *Physical* magazines.

Notwithstanding General Nutrition Center's desire to pursue new means of advertising, Mancini, in his capacity as CEO, was involved with an amendment to an existing agreement between GNC and Franklin in 2004– three years before the agreements were set to expire.  Mancini began negotiating directly with Scott Johnson, owner of Franklin, to extend the *Let's*

*Live* and *Physical* agreements despite the fact that GNC's marketing department had historically handled the negotiations of them.  Mancini contacted Johnson via telephone numerous times in 2004.  Mancini, however, did not go to Ohio to negotiate any aspect of the agreement.  Moreover, Mancini executed the agreement when he signed them in Pennsylvania on approximately June 22, 2004.

Subsequent to GNC's discovery of Mancini's allegedly unauthorized and improper execution of the extension agreements and the relationship between Mancini's wife and Franklin, GNC filed the Third Party Complaint.  (Doc. # 43.)  In the First Count, GNC alleges that Mancini breached his fiduciary duty as an officer and director of GNC and a director of General Nutrition Centers by failing to disclose to General Nutrition Centers's board of directors his and his wife's beneficial relationship with Franklin, his intent to execute the extension agreements without authority, and his actual execution of the agreements.  In Count Two, GNC alleges that Mancini breached his fiduciary duties of ordinary care and loyalty by purporting to bind GNC to the extension agreements when General Nutrition Centers board of directors did not authorize him to do so, and the Committee had also not given Mancini their approval.

### B.  Standard of Review

A plaintiff has the burden of showing personal jurisdiction when there is a motion to dismiss for a lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  "In diversity cases, the federal court applies the law of the forum state in which it sits to determine if personal jurisdiction is appropriate."  *Rabiroads v. DFK Leasing Co., Inc.,* 68 F. Supp. 2d 850, 852 (N.D. Ohio 1999).  When there is a motion to dismiss for lack of personal jurisdiction and no hearing is

conducted, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction." *Rothschild Berry Farm v. Serendipity Group, LLC,* 84 F. Supp. 2d 904, 905 (S.D. Ohio 1999) (punctuation omitted) (citation omitted).

A court may exercise personal jurisdiction if the state's long-arm statute reaches the defendants and the exercise of jurisdiction comports with federal due process. *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). In some states, the long-arm statute reaches as far as due process permits. *Rabiroads*, 68 F. Supp. 2d at 852. The Ohio Supreme Court, however, has determined that Ohio's long-arm statute is not co-extensive with due process, and therefore, determining the existence of personal jurisdiction requires analysis under both Ohio's long-arm statute and federal due process. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638 N.E.2d 541, 543, (1994); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

### C.  Discussion

Mancini moves to dismiss the Third Party Complaint (Doc. # 43) pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over him. First, Mancini argues that this Court does not have personal jurisdiction because the requirements of Ohio's long-arm statute are not met. Specifically, Mancini contends that he personally did not transact business in Ohio. Mancini posits that any contacts he had with Ohio–namely his telephone negotiations with Scott Johnson–were on behalf of GNC. Thus, according to Mancini, the fiduciary shield doctrine prevents this Court from exercising personal jurisdiction over him. Mancini further argues that even if he did transact business in Ohio, his contacts with Ohio do not give rise to GNC's cause of action. Mancini acknowledges that a "but for" relationship may

exist between Mancini's negotiations with Franklin on behalf of GNC and GNC's breach of fiduciary duty claims. Mancini contends, however, that his contacts with Franklin are not the proximate cause of GNC's breach of fiduciary duty claims against him. Rather, Mancini argues that the thrust of GNC's breach of fiduciary claims is based allegedly on Mancini's acts/omissions in Pennsylvania. Namely, GNC's claims arise from Mancini's alleged failure to involve General Nutrition Centers's board of directors and GNC's Committee, obtain their supposedly necessary consents, and disclose to them he and his wife's beneficial relationship with Franklin.

Conversely, GNC argues that this Court has specific personal jurisdiction over Mancini[1]. GNC contends that the mere fact that Mancini's actions in Ohio were undertaken in his official rather than personal capacity does not preclude this Court's exercise of personal jurisdiction. Rather, GNC posits that this Court may exercise personal jurisdiction because Mancini allegedly

---

[1] For the purpose of due process analysis, the Supreme Court distinguishes between "general" jurisdiction and "specific" jurisdiction, either one of which is an adequate basis for personal jurisdiction. *E.g., Youn v. Track*, *Inc.* 324 F.3d 409, 417 -418 (6th Cir. 2003). For a non-resident defendant, when the cause of action does not relate to the defendant's actions in the forum state, a court only has personal jurisdiction when it can establish general jurisdiction over the defendant. *See Youn,* 324 F.3d at 418 (citations omitted). A federal court has general jurisdiction when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state. *Id*

Conversely, for a non- resident defendant, when the cause of action does relate to the defendant's actions in the forum state, a court has personal jurisdiction when it can establish specific jurisdiction over the defendant. *Id*. Specific jurisdiction exists when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id*. (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984)). The constitutional touchstone of specific personal jurisdiction is whether the non-resident defendant established such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); *see also Youn,* 324 F.3d at 417.

engaged in tortious conduct outside the scope of his employment.  With respect to Ohio's long-arm statute, GNC contends that Mancini's actions constitute transacting business in Ohio.  Namely, Mancini directly negotiated the extension agreements via telephone with Johnson in Ohio.  GNC then argues that Franklin sent the extension agreements directly to Mancini who then returned the executed agreements back to Franklin.[2]  GNC further contends that Ohio's long-arm statute is met because Mancini's actions in Ohio are the proximate cause of GNC's breach of fiduciary duty claims.

For the reasons that follow, this Court finds that Mancini's actions rise to the level of "transacting business" under Ohio's long-arm statute.  Ohio Rev. Code § 2307.382(A)(1).  This Court also finds, however, that Mancini's actions in Ohio are not the proximate cause of GNC's breach of fiduciary duties claims against Mancini.  Thus, this Court does not have personal jurisdiction over Mancini because the "arising from" prong of Ohio's long-arm statute is not met.    To determine whether personal jurisdiction exists, the Court turns first to the question of whether this Court may exercise personal jurisdiction over Mancini for actions that Mancini performed as a corporate officer for GNC.

The fiduciary shield doctrine generally prevents the exercise of personal jurisdiction over a corporate officer whenever an out-of-state officer's contacts with the forum state occur by virtue of his or her acts as a fiduciary.  *Balance Dynamics Corp. v. Schmitt Indus. Inc*. 204 F.3d

---

[2] The Court notes that Mancini contends that while the transcripts reveal that Franklin sent the agreements to GNC and GNC then returned the executed agreements with Mancini's signature, the transcripts do not show that the agreements were sent to or returned by Mancini specifically.  Rather, Mancini contends that the record shows that Franklin sent the executed agreements to an assistant general counsel for GNC and Mancini only received a courtesy copy.

683, 697 -98 (6th Cir. 2000)(stating " [t]he fiduciary shield doctrine is formulated as follows: "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981))).

Under Sixth Circuit case law, however, the fiduciary shield doctrine does not prohibit a court from exercising personal jurisdiction over corporate officers where the officers were personal, active participants in allegedly tortious or violative conduct. *Balance Dynamics Corp.*, 204 F.3d at 697 -98 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6 th Cir)) (holding that "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants"); *see Serras v. First Tennessee Bank N.A.*, 875 F.2d 1212, 1217 (6th Cir.1989); *698 Chattanooga Corp. v. Klingler*, 704 F.2d 903, 906-07 (6th Cir.1983).

Here, GNC alleges that Mancini engaged in tortious conduct when he directly negotiated the extension agreements via telephone with Johnson in Ohio. When such allegation is made, it is immaterial that Mancini was acting in a official capacity when he initiated, negotiated, and obligated GNC to extension agreements with Franklin. Thus, the fiduciary shield doctrine does not preclude this Court from exercising personal jurisdiction over Mancini.

**1. Ohio's Long-Arm Statute**

This Court now turns to whether the requirements of Ohio's long-arm statute are met. Though Ohio's long-arm statute "does not extend to the constitutional limits of the Due Process Clause, [the] central inquiry is whether minimum contacts are satisfied so as not to offend

'traditional notions of fair play and substantial justice.'" *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998)).  When jurisdiction is founded on the long-arm statute, the asserted cause of action must arise from at least one of the nine criteria listed in the statute.³  *See Berning v. BBC, Inc.*, 575 F. Supp. 1354, 1356 (S.D. Ohio 1983).  Among those criteria are transacting business in Ohio, contracting to supply goods or services in Ohio, causing tortious injury in Ohio, and having a real property interest in Ohio.  § 2307.382(A)(1)-(9).

The two statutory requirements under the long-arm statute at issue here are (1) whether Mancini "transact[ed] any business" in Ohio "directly or by an agent," and (2) that the case deals with a "cause of action arising from" the business transacted in Ohio.  § 2307.382(A)(1); *see*

---

³ Ohio's long-arm statute, Ohio Rev. Code § 2307.382, states:
(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.
(8) Having an interest in, using, or possessing real property in this state;
(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.
(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

8

*also* Ohio Rev. Code § 2307.382(C) (further detailing the "arising from" requirement). The provisions of the statute relating to transacting any business are [Ohio]" are broadly worded. *Mustang Tractor & Equip. Co. v. Sound Envtl Serv., Inc*. 727 N.E.2d 977, 981 (Ohio Com. Pl.1999)*; see also Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479-480 (Ohio 1990). The word "transact" used in the long-arm statute is broader than the term "contract" and embraces in its meaning "to carry on business" and "to have dealings." *Mustang Tractor & Equip. Co.,* 727 N.E.2d at 981 (quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (Ohio 1994)). Personal jurisdiction under the long-arm statute does not require that the non-resident have a physical presence in the state. *Mustang Tractor & Equip. Co.,* 727 N.E.2d at 981; *see generally U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* 68 Ohio St.3d 181, 624 N.E.2d 1048 (1994). But where a nonresident "initiates, negotiates a contract, and through a course of dealing becomes obligated to make payments to an Ohio corporation," that nonresident was "transacting any business in [Ohio]" for purposes of the long-arm statute. *Mustang Tractor & Equip. Co.,* 727 N.E.2d at 981 (quoting *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.*, 82 Ohio App.3d 369, 374, 612 N.E.2d 472, 475 (Ohio Ct. App. 1992)). Thus, the act of contracting can qualify as transacting business under Ohio's long-arm statute. *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D.Ohio1999).

A nonresident's mere solicitation of business in Ohio, however, does not constitute "transacting any business in [Ohio]." *Mustang Tractor & Equip. Co.,* 727 N.E.2d at 981 (quoting *Sherry v. Geissler U. Pehr GmbH*, 100 Ohio App.3d 67, 74, 651 N.E.2d 1383, 1387 (Ohio Ct. App. 1995)).

9

Here, this Court finds that Mancini transacted business in Ohio. Importantly, Mancini engaged in the act of contracting with Franklin. *See Hammill Mfg. Co. v. Quality Rubber Prod.*, Inc., 82 Ohio App.3d 369, 373, 612 N.E.2d 472, 475 (Ohio App. 6 Dist.,1992) (finding that a foreign corporation also directly engaged in business dealings in Ohio when it solicited the business of an Ohio corporation by phone, conducted negotiations over the phone with the Ohio entity, and ultimately came to an agreement which was reduced to writing). Mancini initiated, negotiated, and obligated GNC to extension agreements via telephone conversations with Franklin in Ohio. Moreover, as a result of Mancini's dealings with Franklin in Ohio, GNC had a continued contractual obligation to pay Franklin for its advertising. It is immaterial that Mancini never visited Ohio to discuss the extension agreements. Mancini's action arise to the level of transacting business in Ohio.

Having so found the Court must now turn to whether the "arising from" requirement of Ohio's long-arm statute is met. Namely, this Court must address whether Mancini's actions in Ohio are the proximate cause of GNC's breach of fiduciary duties claims against Mancini.

The Sixth Circuit has concluded that Ohio Supreme Court has held that Ohio's long-arm statute requires a "proximate cause" relationship between a plaintiff's personal injury claim and the defendant's conduct in Ohio. *Brunner v. Hampson,* 441 F.3d 457, 465-66 (6th Cir. 2006) (stating that the long-arm statute requires a "tighter fit" in order for a claim to arise from defendant's conduct of business in Ohio than the "but for" requirement under the Due Process Clause).

In *Coleman v. Chen,* Ohio long-arm statute's requirement that the cause of action arise out of the defendants' contacts with the state was not met. 712 F. Supp. 117, 117-19 (S.D.Ohio

1988). In *Coleman*, an Ohio resident, brought suit in Ohio against the Chens, who were California franchisees of Holiday Inn hotels. While on vacation in California, Coleman stayed in the Chens' Holiday Inn hotel in Pasadena and allegedly slipped and fell in the parking lot. *Id.* at 119. Coleman argued that the Ohio long-arm statute was satisfied based on Holiday Inn's advertisements in the state of Ohio. *Id.* at 120. In support of her claim, Coleman asserted that she had decided to stay at the Chens' hotel in part because of those advertisements. *Id.* at 120-21. The Chens brought a motion to dismiss for lack of personal jurisdiction. The District Court held, however, that Plaintiff's personal injury action did not arise from Chen's advertising, but allegedly from the condition of the Pasadena Holiday Inn's parking lot. *Id*. at 122.

Here, this Court cannot find that Mancini transacting business in Ohio gave rise to GNC's breach of fiduciary duty claims. This Court emphasizes that a "but for" connection between Mancini's negotiations with Franklin and GNC's injuries giving rise to their breach of fiduciary duty claims does not satisfy Ohio's long-arm statute requirements. Like *Coleman*, one cannot reasonably say that Mancini's business transactions in Ohio were the proximate cause of GNC's injuries giving rise to their breach of fiduciary duty claims. Rather, this Court finds that Mancini's alleged acts/omissions in Pennsylvania proximately caused GNC's injuries giving rise to their breach of fiduciary duty claims .

In the First Count, GNC alleges that Mancini breached his fiduciary duty as an officer and director of GNC and a director of General Nutrition Centers by failing to disclose to General Nutrition Centers's board of directors his and his wife's beneficial relationship with Franklin, his intent to execute the extension agreements without authority, and his actual execution of the agreements. This Court notes that any disclosure request that GNC made to Mancini regarding

potential conflicting business dealings or transactions was made in Pennsylvania. Moreover, any failure of Mancini to disclose dealings or transactions with respect to his wife's relationship occurred solely in Pennsylvania as well. The actual execution of the agreements, namely Mancini reducing the negotiations to writing and signing them, was also done in Pennsylvania.

In Count Two, GNC alleges that Mancini breached his fiduciary duties of ordinary care and loyalty by purporting to bind the Company to the extension agreements when General Nutrition Centers board of directors did not authorize him to do so and the Committee also had not approved his actions. Thus, all of Count Two is based allegedly on Mancini's acts/omissions in Pennsylvania with respect to his dealings with the board of directors and the Committee.

This Court holds that the connection between Mancini's contacts with Ohio and the injuries that gave rise to GNC's breach of fiduciary duties claims are too tenuous to meet the "arising from" requirement of Ohio's long-arm statute for this Court to exercise personal jurisdiction over Mancini.

### 2. Due Process

As set forth above, we hold that the Ohio's long-arm statute is not satisfied in this case. This Court thus has no reason to analyze whether the Fourteenth Amendment's Due Process Clause is a limitation on the exercise of personal jurisdiction. *Brunner,* 441 F.3d at 467.

### D. Conclusion

For the reasons aforementioned, this Court grants Mancini's Motion to Dismiss. (Doc. # 63.) The clerk shall enter judgment accordingly and terminate the Third Party Complaint upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

    /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**